566

## In re SHAW.
### No. 3005a.

District Court, D. New Jersey.
Aug. 5, 1943.

Louis B. Le Duc, of Camden, N. J., for Columbus Water Co. and Andrew J. Poinsett.

Inlander & Cohen, of Newark, N. J., for trustee.

FORMAN, District Judge.

In October of 1940, Ernest Shaw was the proprietor of a drug store at Columbus, New Jersey. Andrew J. Poinsett lived in the same town. He had a business in Mt. Holly and owned a business property in Wrightstown, New Jersey. The latter is a small community immediately adjacent to the then rapidly expanding military installation at Fort Dix. As a result of negotiations between the two at that time, Shaw closed down his drug store in Columbus and opened a similar business in Poinsett's property in Wrightstown.

On March 18, 1941, Shaw executed to Poinsett a real estate mortgage in the sum of $1,800 covering his property in Columbus and a chattel mortgage in the same amount covering the personal property and fixtures in the drug store at Wrightstown. Subsequently, Poinsett assigned both mortgages to the Columbus Water Company.

On February 20, 1942, Shaw was adjudicated a voluntary bankrupt. In due course a trustee for his estate was duly qualified. On March 30, 1942, the Columbus Water Company petitioned the court to have turned over to it the personal property covered by the chattel mortgage given to Poinsett and assigned by him to it. At about the same time the trustee applied to the court to restrain the Columbus Water Company, the holder by assignment of the real estate mortgage, from instituting any proceedings to foreclose the said mortgage, and for an order directing that the mortgage should be surrendered for cancellation.

Upon the issues raised by these applications the Referee took testimony, at the conclusion of which he found in a written opinion that as between themselves, Shaw and Poinsett were partners; that the chattel mortgage was void by reason of the fact that the affidavit was inaccurate, and that since Columbus Water Company, as assignee of Poinsett, stood in his shoes, the real estate mortgage had no considera--

tion to support it because the purported consideration, namely rent and advances, was not due from Shaw to Poinsett at the time the mortgage was given and therefore it was void also. It was also held by the Referee that there was no consideration to support the contention that the mortgages were an accord and satisfaction.

The Referee in his opinion sets forth the particulars upon which he bases his conclusions. Some of them are that Shaw testified definitely that there was a partnership; that Poinsett waited on the customers in the Wrightstown store, made purchases, had in his possession the keys to the cash register and checked the daily receipts. He calls attention to the testimony of other witnesses who swore that Shaw introduced Poinsett as his partner; that Poinsett stated he was going into partnership with Shaw and that Poinsett referred to Shaw as his partner. Poinsett in his own testimony gave inconsistent stories as to the consideration for the mortgages. He testified to varying amounts for rentals and proved himself entirely unreliable as far as giving a coherent and believable statement of his relationship with Shaw.

The Referee accordingly entered a decree which was brought up for review by Columbus Water Company and Poinsett and argument has been heard thereon.

The petitioners for review contend that the Referee erred (1) in finding that there was a partnership arrangement between Shaw and Poinsett; (2) in failing to hold that the mortgages constituted an accord and satisfaction; and (3) in finding that the chattel mortgage was void for failure to state its consideration accurately.

The petitioners discussed the alleged erroneous finding of the partnership by the Referee in the following manner: first they attack the evidence supporting the inference of partnership as adduced before the Referee. They contend that the testimony of Shaw led to the conclusion that there was no partnership formed at the time and that at best a partnership was only in contemplation of the parties for the future. They have pointed to excerpts from Shaw's testimony to support such assertion. The Referee found that Shaw definitely testified that there was a partnership and examination of the testimony leads me to conclude with the Referee that Shaw's testimony points to the formation of a partnership at the time in question. The excerpts from his testimony pointed to by the petitioners are quotations indicating a manner of speaking by Shaw that are entirely consistent with the Referee's finding that Shaw testified to the existence of a partnership with Poinsett.

Petitioners seek to dilute the evidence before the Referee by explaining Poinsett's actions in his association with the conduct of the business at Wrightstown as the actions of one interested in helping a fellow-townsman to entrench himself in a new business location with the idea that some day in the future, after all debts had been paid, he would share in the profits of his friend's venture. I cannot agree that the petitioners' analysis of the actions of Poinsett discloses a situation of partnership in so far as Shaw is concerned different than that found by the Referee. His decision in this respect withstands completely the attack by the petitioners and their attempts to explain away the basis for his finding.

Petitioners list a number of matters which they claim negative the idea of partnership, such as the fact that there was no written agreement; that there was no evidence of his assuming any obligation to make any definite contribution; that in March of 1941 a settlement was effected between Shaw and Poinsett which revealed the status to be that of debtor and creditor; that the assets were in Shaw's name; that the purchases of merchandise were made by Shaw and contracts were negotiated by him in his name; that the business itself was conducted under the name of Shaw; that Shaw signed government forms such as his application for a liquor license and the A.B.C. returns; that Shaw failed to indicate a partnership relationship when he filed his bankruptcy petition; that Poinsett's name was never used to obtain credit, Shaw having made all purchases under his own name; and bank accounts were in Shaw's name and Poinsett had no authority to draw on them. All of these considerations are summarized by the petitioners in the following categories: (1) the absence of any agreement between the partners that they were to share debts of the business; (2) the fact that neither partner had authority to bind the other by his contracts; and (3) that when Shaw and Poinsett talked of partnership they talked in terms of future relationship to be developed when the debts of the business were paid. My examination of the testimony and the

Referee's findings convinces me that he made no mistake in concluding that a partnership arrangement existed between Shaw and Poinsett although it is true as the petitioners allege that there was no specific agreement that they should share the debts of the business. This may readily be implied from the conduct of Poinsett and his actions as indicated by all of the testimony.

The second category is not directly relevant to the issue before the Referee which concerns itself not with how far Shaw and Poinsett had bound the other by his contracts but rather relates itself only to the transactions under investigation herein which were between Shaw and Poinsett themselves.

The third category reiterates the claim that Shaw and Poinsett had no partnership relationship at the time but only contemplated one in the future. In this respect, as stated before, the finding of the Referee that there was a then present relationship is amply justified.

The petitioners also argue that in March of 1941, Shaw and Poinsett arrived at a settlement of their mutual dealings and that the mortgages were given to Poinsett as an accord and satisfaction. They submit that the real estate mortgage having been given on Shaw's Columbus property had such a status and that its integrity was further buttressed by the fact that the real estate mortgage was a sealed instrument. The Referee's finding that no consideration supported the accord and satisfaction because a partnership existed between Poinsett and Shaw and there was no money due to Poinsett does not bend to the petitioners' allegations. The seal upon the real estate mortgage imports consideration and raises a presumption that it was present. The Referee correctly disposed of this contention by his conclusion based upon evidence that the presumption had been overcome by a showing that actually there was no consideration.

The petitioners also challenged the Referee's finding that the chattel mortgage was void because they contend that the statement made in the affidavit that the consideration for the mortgage was for back rent and advances while perhaps not strictly in accordance with the fact was made in good faith and only technically inaccurate. Again this argument cannot overcome the clearcut finding of the Referee that the affidavit of the chattel

mortgage was substantially inaccurate, sufficiently to vitiate it under the New Jersey law.

Only in the event that the conclusions of the Referee are clearly erroneous or are shown to have been the result of mistake should they be disturbed by the court. I am convinced that there is ample testimony to support the findings of the Referee and that his conclusions are accurately drawn therefrom.